# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1670V**

| | |
|---|---|
| ALINA DENNIS, | Chief Special Master Corcoran |
| Petitioner, | Filed: December 1, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Brian Lee Burchett, Burchett Law Firm, San Diego, CA, for Petitioner.*

*Joseph Douglas Leavitt, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On September 28, 2023, Alina Dennis filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 1, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I find the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent has argued that Petitioner is not entitled to compensation (ECF No. 20), and the parties have now fully briefed entitlement (ECF Nos. 26, 27, 28). For the reasons set forth below, I find that record evidence preponderantly establishes that Petitioner likely suffered the onset of shoulder pain within 48 hours of vaccination, her pain and reduced ROM were limited to her right shoulder, pre-vaccination conditions would not explain her post-vaccination symptoms, and she has satisfied the remaining requirements for a Table SIRVA.

## I.    Relevant Factual History

### A.  Medical Records

Petitioner's pre-vaccination medical history includes degenerative changes to both acromioclavicular joints, osteoarthritis, rheumatoid arthritis, and fibromyalgia. Ex. 3 at 231; Ex. 5 at 47, 606; Ex. 8 at 66; Ex. 16 at 141. The sole pre-vaccination record documenting right shoulder degenerative changes is a report on 2014 bilateral shoulder x-rays that were performed due to unspecified inflammatory polyarthropathy. Ex. 3 at 231. That x-ray report notes "[d]egenerative change at the a.c. joints, right greater than left," but is otherwise normal. *Id.* The records do not reflect a history of treatment for pain or functional limitations in Petitioner's right shoulder, or that her pre-existing rheumatoid arthritis or fibromyalgia affected her right shoulder. Ex. 5 at 606; Ex. 8 at 66.

On October 1, 2020, Petitioner received a flu vaccine in her right deltoid. Ex. 13 at 4. Ten weeks later (December 14, 2020), Petitioner saw her primary care provider, Kevin Malone, M.D., for evaluation of right upper arm pain that began about two months prior after a vaccination and which had persisted. Ex. 3 at 815. Petitioner rated her pain two out of ten, worsening to five out of ten with certain motions. *Id.* Dr. Malone assessed Petitioner with an injection site reaction, and recommended that she try topical medication. *Id.* at 819. He instructed her to contact his office if she wanted to try oral steroids or her pain persisted. *Id.*

Almost three months later (March 4, 2021), Petitioner returned to Dr. Malone with continuing complaints of right shoulder pain. Ex. 3 at 784. Oral steroids "did not help at all," and she now rated her pain as going up to nine out of ten. *Id.* She experienced pain on a daily basis, and it was especially bad at night, making sleep difficult. *Id.* Dr. Malone ordered x-rays and referred Petitioner to an orthopedist. *Id.* at 790. Right shoulder x-rays done a few days later showed mild osteoarthritis, but were otherwise normal. *Id.* at 783.

On March 17, 2021, Petitioner saw nurse practitioner ("NP") Corrie Schmitt in the office of Joel Smith, M.D., who Petitioner explains is a pain management specialist. Ex. 4 at 5. The record states that Petitioner reported "radiating pain in her right arm after the flu shot in *December*," although the same page of this record notes that the onset of her

pain occurred six months earlier after receipt of a flu vaccine (which would place the injury close in time to the at-issue vaccination). *Id.* at 5 (emphasis added). She had experienced pain and limited motion since vaccination, and described "pain around the axillary region." *Id.* She added that her "right hand has gone numb twice," and it was difficult to reach behind her back. *Id.* She had tried oral steroids and over-the-counter pain medication, without relief. *Id.* On examination, her right shoulder range of motion ("ROM") was 90 degrees in abduction and 85 degrees in flexion, and her shoulder was tender to palpation. *Id.* at 7. NP Schmitt diagnosed Petitioner with right shoulder pain and osteoarthritis, noting that they discussed subdeltoid bursitis and frozen shoulder as possible diagnoses as well. *Id.* NP Schmitt ordered physical therapy ("PT") and topical pain-relieving patches, and recommended Petitioner use a pulley to help with right shoulder ROM. *Id.*

Petitioner returned to NP Schmitt the following month (April 23, 2021) to follow up on her right shoulder pain. Ex. 4 at 8. She had been using her right arm for more activities and doing exercises, but still had limited use. *Id.* She continued to exhibit limited ROM and tenderness to palpitation. *Id.* at 10. NP Schmitt administered a cortisone injection in Petitioner's right shoulder. Id. Petitioner was advised to continue home exercises and follow up by video call in two weeks. *Id.*

Two weeks later (May 7, 2021), Petitioner attended a telehealth appointment with NP Schmitt. Ex. 4 at 11. The cortisone injection had improved her pain and ROM "completely" for a week, but her pain then returned, although at a lower intensity than previously. *Id.* She had been sleeping better, but still felt pain when reaching behind her. *Id.* On examination, her right shoulder ROM had improved, and was now 110 degrees in abduction and flexion. *Id.* at 13. NP Schmitt ordered PT and recommended that Petitioner follow up in eight weeks. *Id.*

Petitioner underwent a PT evaluation of her right shoulder on May 28, 2021. Ex. 5 at 1102. She reported "deep achy pain" in her right arm since her flu shot in October 2020. *Id.* Her pain ranged between zero and seven out of ten. *Id.* Petitioner attended several additional PT sessions over the next five weeks, and continued seeking care thereafter. *Id.* at 1096, 1098-1102.

### B. Declarations

Petitioner has submitted two declarations in support of her claim. Exs. 1, 17. Petitioner states that she "felt pain in [her] right shoulder immediately after" vaccination. Ex. 1 at ¶ 3. The pain was severe enough to affect her sleep, and she could "barely raise [her] right arm." *Id.* She hoped it would resolve on its own; when it did not, she went to her primary care provider. *Id.* She had no arm or shoulder complaints prior to vaccination. *Id.* at ¶ 4.

Petitioner states that her pain "originates and is focused on the shoulder," although occasionally she feels soreness further down her arm. Ex. 17 at ¶ 7. Prior to vaccination,

she was able to do housework and slept well. *Id.* at ¶ 2. She loved travel and exploring new places. *Id.* She made scrapbooks with friends, and enjoyed baking and cooking, miniature golf, bowling, pickleball, and snorkeling. *Id.*

After vaccination, Petitioner states, she could do very little housework and no longer sleeps well. Ex. 17 at ¶ 10. She is severely limited in cooking, resulting in more carryout and dining out. *Id.* She can no longer bake or make scrapbooks. *Id.* She is right-handed, and thus her right shoulder injury prevents her from bowling, miniature golfing, playing paddleball, or snorkeling. *Id.* Her injury makes travel and packing more difficult, and limits the activities she can do while on vacation. *Id.*

Petitioner's husband, Derek Dennis, submitted a declaration in support of her claim. Ex. 18. Mr. Dennis recalled that when Petitioner returned home from receiving the flu vaccine on October 1, 2020, she mentioned that her right arm and shoulder hurt more than usual after a shot, and had difficulty moving her shoulder. *Id.* at ¶ 2. She did not have any problems with her left shoulder, where she received a different vaccine on the same day. *Id.* They expected the pain to go away in a few days, but instead it worsened. *Id.* at ¶¶ 2, 3. He recalls waking to hear her crying and moaning in pain in the middle of the night. *Id.*

Mr. Dennis states that Petitioner's right shoulder injury "caused an immediate change in the things that she could and could not do." Ex. 18 at ¶ 4. She could no longer do household chores, which he took on to help. *Id.* She had to change the way she cared for and dressed herself. *Id.* at ¶ 5.

Claire Dennis, Petitioner's daughter, submitted a declaration in support of her claim. Ex. 19. Ms. Dennis recalled that she was with Petitioner when the at-issue vaccination occurred, and the practitioner appeared distracted and "was very short with her," denying her request to receive two vaccines in her left arm. *Id.* at ¶ 2.

Immediately after vaccination, Claire states that her mother mentioned "an intense pain in her right shoulder." Ex. 19 at ¶ 3. This caught Claire's attention, because her mother had not had arm pain in the past. *Id.* Claire and Petitioner received vaccines at the same visit, and Petitioner repeatedly asked Claire if her arm hurt too; Claire told her it did not. *Id.*

As time went on, Claire recalled her mother's pain "became so intense [she] often found her in tears from the shoulder pain and from being debilitated in her daily activities." Ex. 19 at ¶ 4. Claire states that her mother continues to suffer from pain when hugging, doing makeup and hair, changing clothes and doing household chores. *Id.*

Finally, Petitioner submitted a declaration from Shawn Romagnolo, a friend. Ex. 20. They have been friends for almost 20 years and see each other once or twice a week. *Id.* at ¶ 2. He recalls that while they were at lunch after her October 2020 vaccination,

Petitioner complained of right arm pain, stating that she had just gotten a flu shot. *Id.* He does not recall hearing her complain of right shoulder pain, or seeing her exhibit difficulty moving her arm, before that time. *Id.*

## II.        The Parties' Arguments

Respondent argues that Petitioner cannot meet the second, third, and fourth Table SIRVA elements. Respondent's Response, filed Nov. 18, 2024, at *5-9 (ECF No. 27) ("Resp."). First, Petitioner has not demonstrated that her pain began within 48 hours of vaccination. *Id.* at *6-8. Respondent emphasizes that she did not seek care until more than two months after vaccination, and then reported a nonspecific onset of pain. *Id.* And she later reported pain beginning in *December* 2020, well outside of the 48-hour window. *Id.* Although Petitioner submitted testimonial evidence asserting immediate onset of pain, Respondent argues that testimonial evidence cannot outweigh contemporary medical records. Resp. at *7. Thus, Respondent argues that the Table claim should be dismissed. *Id.*

Second, Respondent maintains that Petitioner's symptoms were not limited to her shoulder, noting that she reported radiating pain in her right arm (Ex. 4 at 6), that her right hand had gone numb twice (*id.* at 15), and pain that stopped at her elbow. Resp. at *8. And Respondent cites Petitioner's history of osteoarthritis in her right shoulder and history of fibromyalgia are other conditions that would explain her post-vaccination symptoms. *Id.* at *8-9. Respondent emphasizes Petitioner's 2014 right shoulder x-ray showing degenerative changes. *Id.*

Petitioner argues that the record demonstrates that her pain began within 48 hours of vaccination. Petitioner's Motion for Ruling on the Record, filed Oct. 3, 2024, at *1-3 (ECF No. 26) ("Mot."). At her December 2020 appointment with Dr. Malone, she related her pain to vaccination and was assessed with an injection site reaction. *Id.* at *1 (citing Ex. 3 at 819-824). Her PT evaluation lists an onset date of October 1, 2020 – the date of vaccination – and describes sudden onset after vaccination. *Id.* (citing Ex. 5 at 1102). And testimonial evidence supports these medical records. *Id.* at *2.

Petitioner contends that the record Respondent reads as suggesting that her symptoms began in December (two months after vaccination) contains "an obvious date error." Petitioner's Reply, filed Nov. 21, 2024, at *2 (ECF No. 28) ("Reply"). Petitioner points out that *the same page* of this record makes clear that her pain started *with vaccination*, even though it lists the wrong month of vaccination – supporting a finding that the onset of her pain occurred close in time to vaccination. *Id.*

In addition, Petitioner notes that her extensive pre-vaccination records contain *no* reference to right shoulder pain prior to the at-issue vaccination, and make clear that her rheumatoid arthritis and fibromyalgia affected her ribs and lower back, not her shoulders.

Mot. at *4. And the pre-vaccination shoulder x-ray showing degenerative changes does not reveal that she was *symptomatic* – further demonstrating that her pre-vaccination shoulder condition would not explain her post-vaccination symptoms. *Id.* at *5-6.

Finally, Petitioner argues that her pain was limited to her shoulder. Mot. at *6. Although she described radiating pain, this is not inconsistent with a SIRVA. *Id.* at *6-7. She asserts that it is "not surprising that the shoulder bursa, inflamed and swollen by an errant vaccination, could press on and irritate the nearby axillary nerve and trigger nerve symptoms felt further down the nerve's distribution." *Id.* at *7.


### III.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.,* 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

6

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five-month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

8

IV.    **Ruling on Entitlement**

A.  **Onset**

The record supports a finding that, more likely than not, Petitioner's shoulder pain began within 48 hours of vaccination. Petitioner sought care approximately two and a half months after vaccination, complaining of pain that she related to vaccination, and was assessed with an injection site reaction. Ex. 3 at 815. Although a later record mistakenly documented vaccination as having occurred in *December* rather than October, the six-month history of pain Petitioner reported at this visit aligns closely with her pain having begun immediately after vaccination. And her PT evaluation record lists the date of vaccination as the date of onset of her pain, stating that she had pain since vaccination. Ex. 5 at 1102.

The record Respondent asserts "suggest[s] that her pain had begun in December of 2020" is itself questionable. This same record states that her pain began *after receiving a flu vaccine* in December 2020 (when she clearly did not receive a flu vaccine that month). Ex. 4 at 15. In this context, it is more likely that the mention of December as the month of vaccination is in error than it is that Petitioner's pain began two months after vaccination.

The records on onset otherwise support a finding that Petitioner's pain likely began within 48 hours of vaccination. I have stated in other decisions that a treatment delay of this length does not, by itself, raise serious concerns about onset. *Tully v. Sec'y of Health & Human Servs.*, No. 21-1998V, 2024 WL 4533515 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (finding onset occurred within 48 hours although claimant did not seek care for two and a half months); *Diaz v. Sec'y of Health & Human Servs.*, 20-1003V, 2023 WL 8440873, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset was within 48 hours where the petitioner delayed seeking care for over three months after vaccination); *Buck v. Sec'y of Health & Human Servs.*, No. 19-1301V, 2023 WL 6213423, at *7 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (finding onset of pain occurred within 48 hours where the petitioner did not seek care for over three months and noting that a delay in seeking care is relevant to onset, but not dispositive).

B.  **Petitioner's Symptoms Were Limited to her Right Shoulder**

The records preponderantly establish that Petitioner's symptoms were limited to her right shoulder. Respondent relies on records of hand numbness, radiating pain in her right arm, and pain that stopped at her elbow. It is true that Petitioner reported some symptoms in her arm and hand.

However, Petitioner's symptoms *primarily* occurred in, and originated from, her vaccinated shoulder. *See Valdez v. Sec'y of Health & Human Servs.*, No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily*

experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

In the context of Petitioner's treatment course, with PT and medical visits largely oriented toward the treatment of her shoulder pain, brief mentions of symptoms radiating down her arm or numbness in her hand are not sufficient to establish that the third QAI is not satisfied. These concerns may be relevant to damages, but do not undermine Petitioner's *entitlement* to damages.

### C. Petitioner's Pre-vaccination Arthritis and Fibromyalgia Would not Explain her Post-Vaccination Symptoms

The record does not support a finding that Petitioner's pre-vaccination osteoarthritis, rheumatoid arthritis, or fibromyalgia would likely explain her post-vaccination symptoms. Although Petitioner *suffered* from these conditions prior to vaccination, there is *no* evidence that these conditions caused pain or limitations at that time. Indeed, Petitioner asserts that her rheumatoid arthritis and fibromyalgia affected *different joints*, further attenuating any connection between these and Petitioner's post-vaccination symptoms.

Although an x-ray six years prior to vaccination showed degenerative changes to Petitioner's right shoulder, there are no further records of any concerns relating to her right shoulder until *after* vaccination. Thus, the record preponderantly supports a finding that it is more likely that vaccination caused her symptoms than her pre-existing conditions.

### D. Factual Findings Regarding QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining statutory and SIRVA requirements, and I find that they are preponderantly satisfied. Petitioner's shoulder ROM was limited, and the record does not contain preponderant evidence that Petitioner had a history of right shoulder pain that would explain her post-vaccination symptoms. Ex. 4 at 7; Exs. 3, 5, 8, 16.

Petitioner received a covered vaccine in the United States. Ex. 13 at 4. She suffered residual effects of her condition for more than six months. Ex. 4 at 8-13; Ex. 5 at 1102. And she states that she has not previously collected an award or settlement in any civil action for damages for her vaccine-related injuries, nor has any civil action been initiated for her injuries. Ex. 1 at ¶ 14. Thus, Petitioner is entitled to compensation.

**Conclusion**

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner's shoulder pain began within 48 hours of vaccination, her pain and reduced ROM were limited to her right shoulder, and no other condition would explain her post-vaccination symptoms. I also find that all SIRVA Table requirements are preponderantly met, as are all statutory requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

11